Anthony WILLIAMS, Plaintiff—
Appellant,

v.

State of NEVADA; Nevada Prison De-
partment; Nevada Corrections Asso-
ciation, Defendants—Appellees.

No. 00–16714.

D.C. No. CV–98–00675–HDM/VPC.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 8, 2001.

Decided Dec. 10, 2001.

Before CANBY, GRABER, and PAEZ, Circuit Judges.

### MEMORANDUM *

Anthony Williams appeals the district court's grant of summary judgment in favor of the defendants the State of Nevada Department of Prisons and the Nevada Corrections Association on his race discrimination and retaliation claims. We af-

firm the district court's grant of summary judgment on all claims.

■ The trial court correctly dismissed Williams' claims under § 1981. The § 1981 claim against the State of Nevada pursuant to 42 U.S.C. § 1981 was barred by the State's Eleventh Amendment immunity. *See* 42 U.S.C. § 1981; *Peters v. Lieuallen,* 693 F.2d 966, 970 (9th Cir.1982); *Mitchell v. Los Angeles Community College Dist.,* 861 F.2d 198, 201 (9th Cir.1988). The § 1981 claim against the Association was fatally defective because no facts were alleged to establish liability on the part of the Association under that statute.

■ The district court correctly decided the exhaustion questions as well. Prior to filing a Title VII suit in a federal court, Williams was required to file a complaint with the EEOC. *Stache v. Int'l Union of Bricklayers & Allied Craftsmen,* 852 F.2d 1231, 1233 (9th Cir.1988). Williams failed to name the Nevada Corrections Association at all in his EEOC complaint, and he mentioned only the events leading up to and including his transfer. A federal court may entertain additional claims not presented to the EEOC only if "they are like or reasonably related to the allegations of the EEOC charge." *Id.* at 1234 (internal quotation marks and citations omitted). If it would be redundant for the EEOC to investigate the claims included in the EEOC charge and those not included, the claims are closely enough related that all claims can be deemed exhausted. *Id.*

■ We agree with the district court that Williams' claims against the Association are not so closely related to the claims in the EEOC complaint that they can be viewed as exhausted. An EEOC investigation into the "hymie" incident and the subsequent transfer would not have made

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

redundant an investigation into the Association's legal representation in Williams' reinstatement hearing.

 The court was also correct in its holding that the claims regarding retaliation after Williams returned to the Camp were not exhausted. The harassment Williams alleges he suffered on returning to the Camp was not of the same general type as the conduct of which he complained in the EEOC complaint. The harassment was directed towards him individually, while the earlier conduct involved a generalized, racially charged atmosphere. Also, the post-return harassment was carried out by several individuals, while the earlier conduct primarily involved Cosgrove, who did not harass Williams after his return to the Camp. The retaliatory harassment allegations are not sufficiently "like or reasonably related" to the other allegations that an EEOC investigation would have been redundant.

Williams' only remaining claims are the Title VII claims against the Department of Prisons relating to (1) racial remarks that Williams contends created a hostile work environment, and (2) the transfer that Williams believes was retaliation for complaining about the hostile work environment.

 With regard to the Title VII hostile work environment claim, the specific incidents described—Cosgrove's two remarks and Mathis' single remark—are not so "severe or pervasive" that a reasonable African–American would find that they altered the conditions of employment. *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1462–63 (9th Cir.1994). Accordingly, we affirm the summary judgment for the state on the hostile work environment claim.

 To make out a prima facie case of retaliation, Williams was required to "establish that [he] acted to protect [his] Title VII rights, that an adverse employment action was thereafter taken against [him], and that a causal link exists between these two events." *Steiner,* 25 F.3d at 1464. Williams had an administrative hearing and the transfer was found to be an unlawful disciplinary action, stemming from Mathis' belief that Williams was not conducting himself appropriately with other officers and with inmates. Of the numerous incidents discussed during the administrative hearing, only the "hymie" incident had any racial component. The uncontroverted evidence indicates that, to the extent this incident played a role in the transfer, it was Williams' open disagreement with another officer in front of the inmates, rather than the substance of the disagreement, that led to the disciplinary action.[1] Although Williams proved that an adverse employment action was taken against him, he failed to produce evidence that would permit a reasonable trier of fact to find that he acted to protect his Title VII rights or that his alleged attempt to protect his rights had a causal link to the transfer. The court correctly granted summary judgment in favor of the Department of Prisons on the retaliation claim.

The district court's summary judgment dismissing all of Williams' claims is

**AFFIRMED.**

---

1. The hearing officer considered and rejected Williams' contention that the transfer was discriminatory.